**Rex D. HILL, Plaintiff,**

**v.**

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**Case No. 6:14–cv–950–Orl–41KRS.**

United States District Court, M.D. Florida, Orlando Division.

Signed Oct. 6, 2014.

Filed Oct. 7, 2014.

1278

Albert H. Mickler, Mickler & Mickler, Jacksonville, FL, for Plaintiff.

Irma Reboso Solares, Scott E. Byers, Stephanie Ann Fichera, Carlton Fields Jorden Burt, PA, Miami, FL, for Defendant.

## ORDER

CARLOS E. MENDOZA, District Judge.

THIS CAUSE is before the Court on Plaintiff's Motion to Remand (Doc. 14) filed July 15, 2014. Defendant Allianz Life Insurance Company of North America filed its Response in Opposition (Doc. 16) on July 31, 2014. Plaintiff argues (1) that Defendant's Notice of Removal (Doc. 1) was premature because it was based on a Motion for Leave to Amend which had not yet been ruled upon by the State court, or, alternatively, (2) untimely because it was filed more than one year after the commencement of the case in State court. For the reasons set forth below, Plaintiff's Motion to Remand will be denied.

### I. PROCEDURAL BACKGROUND

Plaintiff filed this case in the Eighteenth Judicial Circuit in and for Brevard County, Florida on February 8, 2013, alleging State law claims for slander and tortious interference with an expectancy. (Compl., Doc. 2, at 1, 2–10). The original Complaint claimed "damages greater than $15,000.00 but less than $75,000.00." (*Id.* ¶ 1). Specifically, the Complaint alleged that "[Plaintiff] would have received an estimated net income of approximately $16,000.00 for the months of September 2012 to February 2013" and that, at the time of filing, Plaintiff "continue[d] to lose net income revenue" as a result of Defendant's conduct. (*Id.* ¶ 31–32). On July 14, 2013, in response to interrogatories from Defendant, Plaintiff stated that his damages were presently $17,209.00 and would "continue to accrue." (Pl.'s Answers to Interrog., Doc. 1–5, at 6–8, 12). On May 20, 2014, Plaintiff filed a Motion to Amend Complaint in state court with an attached proposed First Amended Civil Complaint. (Pl.'s Mot. to Am., Doc. 1–9, at 502–16). In his Motion to Amend, Plaintiff sought to

add his wholly owned field marketing organization ("FMO"), Lifestyles Financial Services, Inc., as a nominal party not independently seeking damages. (*Id.* at 502; First Am. Civil Compl., Doc. 1–9, ¶ 4). Additionally, Plaintiff's Motion to Amend contains a footnote stating "Parenthetically, it should be noted that [Plaintiff] no longer restricts the amount of damages claimed in Para[graph] No. 1." (Pl.'s Mot. to Am. at 503 n. 1). No additional explanation for the increase was offered, but the proposed First Amended Civil Complaint alleges "an action for damages greater than $75,000.00." (First Am. Civil Compl. ¶ 1). The proposed First Amended Civil Complaint did not add any additional claims for relief or additional factual information.

Based on Plaintiff's Motion to Amend, Defendant filed its Notice of Removal pursuant to 28 U.S.C. § 1332 with this Court on June 18, 2014. (Notice of Removal at 1–2, 7). The State court did not rule on the Motion to Amend prior to this case being removed. Neither party disputes that Plaintiff is a resident of Florida and Defendant is a resident of Minnesota and therefore, complete diversity exists. (*Id.* at 2). Further, it is not disputed that Plaintiff now seeks damages in excess of $75,000. (Mot. to Remand at 18).

## II. LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A district court has original jurisdiction where both "the matter in controversy exceeds the sum or value of $75,000" and the parties are "citizens of different States." 28 U.S.C. § 1332(a).

"The substantive jurisdictional requirements, however, are not the only hurdles that a removing defendant must clear. There are also procedural requirements regarding the timeliness of removal." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 756 (11th Cir.2010). "The notice of removal of a civil action or proceeding shall be filed within [thirty] days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). If the case is not immediately removable, "a notice of removal may be filed within [thirty] days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3).

A defendant may not remove a case "on the basis of jurisdiction conferred by [§ 1332] more than [one] year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* § 1446(c)(1). If the Court "finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith." *Id.* § 1446(c)(3)(B).

"Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir.1999). Any doubt as to "jurisdiction should be resolved in favor of remand to state court." *Id.*

## III. ANALYSIS

Plaintiff's Motion to Remand challenges the procedural, but not the substantive,

merit of Defendant's Notice of Removal. First, Plaintiff argues that removal was premature because the State court had not yet granted the Motion to Amend. Defendant argues that removal is timely because it occurred within thirty days of Plaintiff's Motion to Amend, which placed Defendant on notice that the case was removable pursuant to § 1332. Second, Plaintiff argues that even if removal was not premature, it is untimely because it occurred over one year after the initial Complaint was filed. Defendant does not dispute that more than one year lapsed but argues that Plaintiff deliberately and in bad faith, concealed the true amount in controversy. Plaintiff's Motion will be denied because a ruling by the State court on Plaintiff's Motion to Amend was not necessary in order to satisfy the amount in controversy requirement and because Defendant has sufficiently established bad faith in order to overcome the one year limitation in § 1446.

### A. Motion to Amend

There is a split of authority among the United States District Courts in the Eleventh Circuit as to whether a motion to amend, prior to being granted, triggers the thirty-day removal clock under § 1446. Generally, the courts have favored remand of cases in which a motion to amend remains pending at the time of removal. *See, e.g., Barwick v. Eslinger,* No. 6:12–cv–635–J–37DAB, 2012 WL 1656736, at *2 (M.D.Fla. May 10, 2012); *Long v. FIA Card Servs., N.A.,* No. 2:12–CV–14–FtM–UASPC, 2012 WL 2370218, at *3 (M.D.Fla. Apr. 11, 2012); *Lahey v. State Farm Mut. Auto. Ins. Co.,* No. 8:06–CV–1949–T27–TBM, 2007 WL 2029334, at *2 (M.D.Fla. July 11, 2007). On the other hand, a minority of courts have found that a motion to amend alone starts the removal clock ticking. *See, e.g., White v. State Farm Mut. Auto. Ins. Co.,* No. 3:13–cv–765–J–

99TJC–PDB, 2013 WL 6061890, at *4 (M.D.Fla. Nov. 18, 2013); *Williams v. Heritage Operating, L.P.,* No. 8:07–cv–977–T–24MSS, 2007 WL 2729652, at *2 (M.D.Fla. Sept. 18, 2007); *Pease v. Medtronic, Inc.,* 6 F.Supp.2d 1354, 1358 (S.D.Fla.1998).

This case stands on substantially different procedural footing than did the cases in *Barwick, Long,* and *Lahey,* and in most other instances in which the courts have remanded for a ruling on a motion to amend. In those cases, the motion to amend proposed an amendment that would create federal jurisdiction, but if the state court denied the motion then the case would not become removable. *Barwick,* 2012 WL 1656736 at *2 ("Although Plaintiffs' proposed Fourth Amended Complaint may have contained federal causes of action ... [they] remain nothing more than proposed causes of action until the state court judge allows Plaintiffs to file their newest complaint." (emphasis removed)); *Long,* 2012 WL 2370218 at *2–3 (holding that motion to amend complaint to add punitive damages did not start the clock because amount in controversy was not met unless the motion was granted); *Lahey,* 2007 WL 2029334 at *2 (holding that a motion to amend to assert bad faith claim did not start the clock because no claim existed to be removed unless the motion was granted). In a circumstance where a state court is required to act in order to potentially establish the jurisdictional prerequisites of federal court jurisdiction, a notice of removal filed prior to the granting of a motion to amend would be premature.

Defendant did not however, file prematurely in this case because no action was required by the State court for § 1332 diversity jurisdiction to exist. The amount in controversy is not controlled by the

court, it is controlled by Plaintiff's claims. Plaintiff stated in his Motion to Amend and proposed First Amended Civil Complaint that he now intends to seek damages in excess of $75,000. Plaintiff's "ability and intention to seek that amount of damages is not affected by the state court's disposition of the Motion to Amend." *White*, 2013 WL 6061890 at *4; *see also Donnelly v. City of Parkland*, No. 12–60015–Civ, 2012 WL 253212, at *1 (S.D.Fla. Jan. 26, 2012) ("[A] defendant may learn of a plaintiff's intention to seek damages in excess of $75,000 through a proposed amended complaint, and the case may become removable before the state court rules on the motion for leave to file the proposed amended complaint.").

■ Plaintiff was not seeking to add any additional claims; he sought only to add a nominal party, which would not have an effect on the diversity jurisdiction of this Court. Where the result of a Motion to Amend in state court would have no impact on the Court's jurisdiction, Defendant is not required to wait for a ruling to begin the removal process. Defendant's removal also appears to have been strategic in nature. Plaintiff asserts that Defendant should have waited for a decision from the State court, even at the risk of allowing thirty-days to expire in the process. Considering the level of sophisticated litigation undertaken thus far on the matter of removal, it seems unlikely that Plaintiff would have made a decision to forego a procedural attack on Defendant's removal had said removal occurred after the expiration of thirty days due to Defendant awaiting a decision from the State court.

Plaintiff's Motion to Amend placed Defendant on notice that the amount in controversy was in excess of $75,000 thereby establishing federal diversity jurisdiction and triggering the running of the thirty-day period under § 1446. The Motion to Amend was filed on May 20, 2014, and Defendant filed its Notice of Removal on June 18, 2014, twenty-nine days later. Defendant's removal was timely under § 1446(b)(3).

## B. One Year Limit on Removal

■ Although Defendant's Notice of Removal was timely filed within the thirty-day period triggered by Plaintiff's Motion to Amend, the Court must still remand if it was filed over one year after commencement of the action unless the Court finds that Plaintiff acted in bad faith. Defendant removed this case on June 18, 2014, which is one year, four months, and ten days after Plaintiff filed his Complaint in State court. This case however, is not subject to the one year limitation on removal of diversity cases because Plaintiff acted in bad faith by concealing information relevant to the actual amount in controversy in order to prevent removal.

■ In 2011, Congress amended 28 U.S.C. § 1446(c) to allow for a bad faith exception to the one year limitation on diversity removal, recognizing that without such an exception plaintiffs could intentionally avoid removal of an otherwise removable case. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n. 12 (11th Cir. 1994) (stating that, prior to the 2011 amendment, Congress "recognized and accepted that, in some circumstances, plaintiff[s] can and will intentionally avoid federal jurisdiction."). "[T]he plaintiff's claims are in bad faith if, by [his] actions, [he] attempted to disguise the existence of the removability of the case until the one-year limitation had run." *Barnett v. Sylacauga Autoplex*, 973 F.Supp. 1358, 1367 (N.D.Ala.1997); *see also* 28 U.S.C. § 1446(c)(3)(B) (deliberately failing to disclose the true amount in controversy in order to prevent removal is bad faith).

Since the amendment, few cases have interpreted the bad faith exception. *Cameron v. Teeberry Logistics, LLC,* however, is instructive on this point. 920 F.Supp.2d 1309 (N.D.Ga.2013). In *Cameron,* the court found that the bad faith exception applied because the Plaintiff

> specifically pled that this case was not removable, knowing that her pleading is entitled to deference by a district court and has important legal consequences regarding federal removal jurisdiction. Second, she failed to amend her complaint, or otherwise notify Defendants that she considered the amount in controversy to be over $75,000, therefore allowing Defendants to continue to rely upon her representation that she was seeking no more than $50,000 in damages. Third, she sent the time-limited demand letter exactly one year and four days after commencement of this suit.

*Id.* at 1316.

The present case is analogous. Plaintiff's Complaint specifically stated "[t]his is an action for damages greater than $15,000.00 but less than $75,000.00." (Compl. ¶ 1). This was sufficient to gain jurisdiction in State court, but also was an affirmative representation that federal jurisdiction did not exist. Defendant was entitled to rely on Plaintiff's assessment of his claim. *Burns,* 31 F.3d at 1094. Contrary to Plaintiff's arguments, Defendant was under no affirmative duty to seek out evidence that would prove Plaintiff was undervaluing his claim before the one year period ran. *Id.* at 1095 ("We will not assume—unless given reason to do so— that plaintiff's counsel has falsely represented ... the value of his client's case. Instead, we will assume that plaintiff's counsel best knows the value of his client's case and that counsel is engaging in no deception."); *see also Rolle v. Brevard Cnty., Fla.,* No. 6:06–cv–714–ORL–19JGG,

2007 WL 328682, at \*15 (M.D.Fla. Jan. 31, 2007); *Pease,* 6 F.Supp.2d at 1358.

Plaintiff then waited until just over three months after the one year removal window had run to move to amend his complaint. In his motion, Plaintiff simply states that he "no longer restricts the amount of damages" to under $75,000. (Pl.'s Mot. to Am. at 503 n. 1). Plaintiff offered no rationale for the change. Moreover, the proposed Amended Complaint contains no additional information that would warrant an increase in the damages sought. Plaintiff cannot simply lift his "restriction" on damages once the window for removal closes. The 2011 amendments to § 1446 were intended to stop just this sort of gamesmanship and forum shopping. *See Barnett,* 973 F.Supp. at 1367 ("Bad faith can generally be inferred from amendment outside of the statutory bar" where the plaintiff "has provided no justification" for the delay.); *Saunders v. Wire Rope Corp.,* 777 F.Supp. 1281, 1284 (E.D.Va.1991) ("Congress did not intend plaintiffs, through gimmicks and artful maneuvering used in connection with the one year bar to removal, to straightjacket or deprive nonresident defendants of their legitimate entitlements to removal.").

Plaintiff's Motion to Remand offers absolutely no plausible reason for the sudden increase in damages aside from bad faith attempts to remain in State court. First, Plaintiff claims that Defendant was on notice from his Complaint that Plaintiff was claiming a continuing loss of net income revenue and therefore, Defendant knew or should have known that Plaintiff would ultimately seek damages over $75,000. (Compl. ¶ 32). In July of 2013, Plaintiff valued his own case at $17,209. (Pl.'s Answers to Interrog. at 6–8, 12). This calculation was based on "loss from September 1, 2012 to June 1, 2013." (*Id.*). This means that, on average, Plaintiff alleges a

loss of roughly $1,912 per month. Assuming that the loss continued to accrue at that rate, at the time of Plaintiff's Motion to Amend the loss would have only equated to a total damages claim of about $40,200. In order to have met the $75,000 threshold, based on the allegation of continuing damages alone, Plaintiff would have had to accrue an additional $57,791, or roughly $4,816 per month, in damages between June 1, 2013 and May 20, 2014. Defendant was given no reason to know or believe that Plaintiff would, after the one year period had run, claim an almost threefold increase in damages or that his damages were allegedly accruing at more than double the rate initially claimed. *See Barnett*, 973 F.Supp. at 1367 (holding that equitable exception to one year limit applied where defendant had no reason to believe that plaintiff would increase the scope of claims after the filing of the original complaint).

Second, Plaintiff contends that there is no bad faith because, at the time the Complaint was filed, "payment of commission overrides to an individual through the individual's closely held separate legal entity FMO were not contemplated." (Pl.'s Mot. to Remand at 21–22). In Plaintiff's Complaint however, he states that he started his own FMO in 1990. (Compl. ¶¶ 8–9). In his Motion to Amend, Plaintiff explains that he controls one-hundred percent of the stock in his FMO and that the business was completely owned and controlled by him. (Mot. to Am. at 502). Notwithstanding the fact that Plaintiff used a wholly owned business as an "independent marketing organization to receive compensation from insurance companies," and from which Plaintiff "withdrew the commissions and other monies ... at his own discretion," Plaintiff claims he simply could not contemplate certain payments at the time the Complaint was filed nor could said payments have become known within one

year. (*Id.*). Even if Plaintiff was truly unaware, he cannot purposefully turn a blind eye to the facts then profit from his ignorance. *Cf. Auto–Owners Ins. Co. v. Se. Floating Docks, Inc.*, 571 F.3d 1143, 1146 n. 6 (11th Cir.2009) ("While bad faith requires more than a merely negligent investigation, a [party] who purposefully remains ignorant of facts that would likely indicate the investigation is inadequate may be found to have acted in bad faith."). Plaintiff's arguments are neither reasonable nor plausible.

Finally, Plaintiff claims that, because the role of the FMO was unknown, he could not have discovered documents evidencing payments to the FMO, and therefore did not know that the damages exceeded $75,000. Any amount of reasonable diligence would have uncovered the payments to Plaintiff's wholly-owned FMO, from which he was withdrawing funds well before March 10, 2014, when Plaintiff first issued a subpoena for the records that he now claims show "payments to [the FMO] ... exceed[ing] $42,000.00 per annum in years 2009–2012." (Pl.'s Mot. to Remand at 20–21). It is worth noting that this subpoena was issued just one month after the one-year removal period lapsed. *See Brower v. Staley, Inc.*, 306 Fed.Appx. 36, 38 (5th Cir.2008) (upholding the denial of a remand despite lapse of one year where Plaintiff had control of information putting damages over jurisdictional threshold and failed to disclose it to Defendant prior to the running of the one year period).

Plaintiff's attempt to "restrict" the amount in controversy to avoid removal constitutes bad faith. Defendant has demonstrated numerous inconsistencies in Plaintiff's explanation for the delay in disclosing the true amount in controversy, and Plaintiff offers no plausible reason for his actions or lack thereof. The Defendant has sufficiently demonstrated that Plaintiff

acted in bad faith. Therefore, the one-year limitation on removal of diversity cases does not apply in the instant case and removal to federal court was indeed proper.

### IV. CONCLUSION

For the forgoing reasons, Defendant has established the timely removal of this case in accordance with 28 U.S.C. § 1446. Therefore, Plaintiff's Motion to Remand (Doc. 14) is **DENIED.**